UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CY GREENE,

                        Plaintiff,

-against-

THE CITY OF NEW YORK, et al,

                        Defendants.
----------------------------------------------------------------X
THE CITY OF NEW YORK, et al,

                        Third-Party Plaintiffs,

-against-

LEWIS COHEN, ESQ.

                        Third-Party Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
08 CV 243 (RJD) (CLP)

DEARIE, Chief Judge.

Defendants and third-party plaintiffs City of New York, the New York City Transit Authority, the Brooklyn District Attorney, and several police officers and detectives (collectively, the "City") assert a third-party claim for contribution against Lewis Cohen. Cohen moves to dismiss the third-party complaint pursuant to Rule 12(b)(6). For the following reasons, Cohen's motion, which is more properly viewed as a motion to vacate the order granting the City leave to file its third-party complaint, is granted.[1]

---

[1] The City's third-party complaint includes a claim for indemnification; the City voluntarily dismissed that claim prior to oral argument on Cohen's motion.

## BACKGROUND

In 1985, plaintiff Cy Greene was convicted after a jury trial of the murder of John Choi on a subway platform in Brooklyn. Greene spent 22 years in prison until his conviction was vacated in 2006 after a state court judge concluded that Greene's trial counsel, third-party defendant Cohen, did not provide him with effective assistance of counsel. At the hearing on Greene's motion to vacate his conviction, Cohen admitted that he did not interview several witnesses identified in police reports. He also admitted that he did not listen to the audiotape of the prosecution's pre-trial interview of Jae Hark Kim, the prosecution's only witness to identify Greene as Choi's killer. The state court judge concluded that had Cohen done so he might have uncovered evidence that would have undermined the prosecution's case, including evidence that he could have used to impeach Kim on cross-examination. Cohen's failure to investigate and uncover this evidence, coupled with the prosecution's "limited proof" at trial establishing Greene as Choi's murderer, led the state court to conclude that Greene did not receive a fair trial. Greene's conviction was vacated and the Brooklyn District Attorney dismissed all charges.

Greene has not sued Cohen. He has, however, sued the City, alleging federal constitutional and civil rights claims pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 as well as pendant state law claims. The gist of Greene's complaint is that the City intentionally suppressed evidence, falsely arrested and maliciously prosecuted him. Specifically, Greene, who is 5'2" tall, alleges, among other things, that the City (i) intentionally concealed from the grand jury Kim's pre-trial statements to the police that Choi's killer was 6' tall (Kim told police at a later interview that the killer was 5'9" tall); (ii) deliberately failed to correct an error in the transcript of Kim's audiotaped pre-trial interview with police (at the interview Kim described Choi's killer as a "tall" guy; the transcript incorrectly reflected that Kim said "call" guy); and

2

(iii) intentionally omitted from police reports statements by a witness that he saw three Spanish-speaking men running from the scene of the crime who were between 5' 8" and 5'10 tall. Greene argues that had the City disclosed this evidence he would have been able to use it as part of his defense.

The City denies any wrongdoing and after obtaining leave from Magistrate Judge Cheryl Pollak filed its third-party claim for contribution against Cohen. Relying on the state court's finding that Cohen failed to provide Greene with effective assistance of counsel, the City alleges that Greene was "falsely convicted" not because of any wrongdoing by the City but because of Cohen's negligence. Therefore, Cohen is "a necessary party in this litigation to determine to what extent he contributed to the allegations made by [] Greene in this action."

Cohen argues that dismissal of the City's third-party complaint -- or, more properly, vacation of Judge Pollak's order granting leave to file the complaint -- is warranted because (i) the City has failed to state a claim upon which relief can be granted and (ii) litigating the City's claim has the potential to prejudice both Greene and Cohen because it will greatly expand discovery, the scope of the trial, and more critically, possibly confuse the jury as to what evidence applies to what claim. The Court agrees.

## DISCUSSION

I. Federal Rule of Civil Procedure 14(a)

Rule 14(a) of the Federal Rules of Civil Procedure, and not Rule 12, governs third-party practice. See e.g., Salomon v. Burr Manor Estates, Inc., 635 F. Supp. 2d 196, 199-200 (E.D.N.Y. 2009). Thus, although Cohen moves to dismiss the City's third-party complaint pursuant to Rule 12(b)(6), the Court considers his motion as a motion pursuant to Rule 14(a) to vacate Magistrate Judge Pollak's order granting the City leave to file its third-party complaint.

Id. (citing 6 Wright, Miller & Kane, *Federal Practice & Procedure*, § 1460 (2d ed.) (noting that the "form of or the name given to the motion is not significant, let alone determinative. Whenever a motion to dismiss or to strike, or to vacate, or for a judgment on the pleadings, or for a summary judgment actually challenges the desirability of the impleader, it will be treated accordingly"); see also Hartford Fire Ins. Co. v. County Asphalt, Inc., 2002 WL 31654853, at *3 (S.D.N.Y. Nov. 22, 2002) (noting that pursuant to Rule 14(a), "[a]ny party may move to strike the third-party claim").

Rule 14(a) provides, in relevant part, that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Salomon, 635 F. Supp. 2d at 199 (quoting Fed. R. Civ. P. 14(a)). The rule was "designed to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." Falcone v. MarineMax, Inc., 659 F. Supp. 2d 394, 401 (E.D.N.Y. 2009) (internal citation and quotation marks omitted).

While impleader is favored, the right to implead is not automatic and it is within the sound discretion of the trial court to grant or deny impleader. Id. at 401-02. In deciding whether to do so, the district court is to consider: "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the [plaintiff or] third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." Salomon, 635 F. Supp. 2d at 199-200 (internal citations and quotation marks omitted); see also Falcone, 659 F. Supp. 2d at 401 ("Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly

4

complicate the trial, or would foster an obviously unmeritorious claim") (internal citations omitted); Hartford Fire Ins. Co., 2002 WL 31654853, at *3 ("court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the plaintiff's claims") (citing Fed. R. Civ. P. 14, advisory committee note, 1963 Amendment); Int'l Medical Tech., Inc. v. Lintech, LLC, 203 F.R.D. 90, 91 (S.D.N.Y. 2001) ("court must balance the benefits of settling related matters in one suit against the possible prejudice to the plaintiff and third party defendants") (internal citations and quotation marks omitted). "Even where [as here] leave to file a third-party action has been granted, Rule 14 permits the impleaded party to challenge the third-party complaint." Salomon, 635 F. Supp. 2d at 200 (citing Fed. R. Civ. P. 14(a)). "When considering a motion to vacate [an order granting leave to implead], the court will exercise the same discretion and consider the same factors as it would on an initial motion to implead." Muniz v. Rexnord Corp., 2006 WL 1749646, at *1 (N.D. Ill. June 21, 2006) (internal citations omitted); see also Salomon, 635 F. Supp. 2d at 200-01 (applying factors).

II.     Failure To State A Claim

"Rule 14 provides only the procedural mechanism for impleader; the substantive merit of the action depends on the federal or state theory of contribution . . . asserted in the third-party complaint." Crews v. County of Nassau, 612 F. Supp. 2d 199, 204 (E.D.N.Y. 2009). Thus, to the extent that the City seeks contribution from Cohen for any damages that it must pay Greene on the federal claims he has asserted pursuant to Sections 1983, 1985 and 1986, a right to contribution must exist either under those statutes or elsewhere under federal law. Id. Similarly, to the extent that the City seeks contribution from Cohen for any damages that it must pay Greene on his state constitutional and common law claims, a right to contribution must exist under state law. Id. at 214 (internal citation omitted).

5

*A.    Federal Claims*

"A right to contribution and/or indemnity under a federal statute 'may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution.'" Mathis v. United Homes, LLC, 607 F. Supp. 2d 411, 420 (E.D.N.Y. 2009) (quoting Tex. Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638 (1981)). Because there is no express right of contribution under Sections 1983, 1985 or 1986, see Crews, 612 F. Supp. 2d at 210 ("the language of [Section 1983] provides no basis for a right of contribution"); Mathis, 607 F. Supp. 2d at 423-24 ("The Civil Rights Acts embodied in sections 1981, 1982 and 1985 . . . do not provide an express right to contribution"), or general common law right to contribution under federal law, see Crews, 612 F. Supp. 2d at 211 (citing Tex. Indus., Inc., 451 U.S. at 642), a right to contribution will arise only if the Court finds an implied right in Sections 1983, 1985 or 1986 or elsewhere in federal common law, see Perks v. County of Shelby, 2009 WL 2985859, at *3 (C.D. Ill. Sept. 15, 2009) (citing Tex. Indus., Inc., 451 U.S. at 638) ("[T]he Supreme Court has determined that when a federal statute such as § 1983 is involved, a court's task is to ascertain whether Congress intended to include a right of contribution between joint tortfeasors in those actions or determine whether such a right exists under federal common law.").

The vast majority of courts to address the issue have refused to find an implied right to contribution arising under Sections 1983 or 1985, noting that neither the legislative history nor Congress's purpose in enacting the statutes suggest that Congress intended to provide such a right. See e.g., Crews, 612 F. Supp. 2d at 210 ("[D]efendants do not point to any indication that this was the case, and the Court is not aware of any legislative or statutory analysis suggesting it,

6

either."); Mathis, 607 F. Supp. 2d at 425 ("[T]he legislative histories of sections 1981, 1982 and 1985 clearly indicate that Congress did not intend to provide defendants, *i.e.*, those who allegedly discriminated against persons protected by the Civil Rights Acts, with any rights to alleviate the liabilities resulting from their discriminatory conduct, including rights to contribution and/or indemnity"); Hurley v. Horizon Project, Inc., 2009 WL 5511205, at *4 (D. Or. Dec. 3, 2009) (noting that "when § 1983 was passed in 1871, 'the common law in this country traditionally prohibited contribution among joint tortfeasors in all cases'" and that it was "highly improbable that Congress considered the issue at all") (quoting Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, 451 U.S. 77, 88 n. 16 (1981).[2] Indeed, because the purpose of these acts is to deter state actors from violating the civil rights of others, providing for a right to contribution would "be inconsistent with the objectives" of these statutes because contribution claims "do not assist federal civil rights plaintiffs in pursuing their claims. . . . Rather, such claims would actually assist the alleged violators of the Civil Rights Acts." Mathis, 607 F. Supp. 2d at 429; see also Crews, 612 F. Supp. 2d at 212 ("Because '[t]he policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law,' . . . and deterrence of these abuses of power by state actors is reduced by the possibility that defendants may seek contribution, permitting a right to contribution in this context may weaken one of the primary purposes of Section 1983") (quoting Robertson v. Wegmann, 436 U.S. 584, 590 (1978)).

It is for the same reason that while Congress has authorized federal courts to invoke state law to protect and vindicate civil rights provided for under Sections 1983, 1985 and 1986, see 42

---

[2] While the Court has been unable to locate a case analyzing whether a right to contribution exists under Section 1986, the Court finds no reason why the same analysis that applies to Sections 1983 and 1985 should not also apply to Section 1986.

7

U.S.C. § 1988,[3] it would not be appropriate to do so here. See Crews, 612 F. Supp. 2d at 214. Even assuming that New York law provides for a right to contribution under these circumstances -- something that as explained below the Court seriously doubts -- permitting the City to invoke a state law right to contribution on Greene's federal claims asserted under Sections 1983, 1985 and 1986 would be inconsistent with Congress's purpose of deterring the deprivation of constitutional rights in enacting those statutes. See Mathis, 607 F. Supp. 2d at 429; see also Mason v. City of New York, 949 F. Supp. 1068, 1079 (S.D.N.Y. 1996) ("Permitting a right to contribution . . . would weaken Section 1983's deterrent value. Accordingly, contribution among joint tortfeasors in Section 1983 cases would conflict impermissibly with the statutory goal of deterrence and is impermissible under the third prong of the Section 1988 test"); Koch v. Mirza, 869 F. Supp. 1031, 1041 (W.D.N.Y. 1994) ("[A]llowing a claim for contribution or indemnification by reference to state common law or statutory laws under 42 U.S.C. § 1988, is irrelevant to and inconsistent with the purpose and policy of the federal civil rights laws, and is, therefore, specifically excluded from consideration under 42 U.S.C. § 1988."); Rosado v. New York City Housing Auth., 827 F. Supp. 179, 184 (S.D.N.Y. 1989) ("[I]ncorporating N.Y. C.P.L.R. § 1401 into 42 U.S.C. § 1983 would be 'inconsistent with the Constitution and laws of the United States'") (quoting 42 U.S.C. § 1988)).

---

[3] Section 1988, in relevant part, provides: "The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause."

In the end, this is not a close call. Given the absence of any persuasive argument to the contrary,[4] the Court joins the vast majority of courts, including two recent decisions in this district, Crews and Mathis, that have concluded that a defendant has no right to contribution from another for any damages that he incurs under Sections 1983, 1985 or 1986. See Crews, 612 F. Supp. 2d at 208 ("Although . . . there is no Second Circuit or Supreme Court precedent, the Court agrees with the majority of courts that have confronted the issue and found that no such claim for contribution is available for Section 1983 actions") (listing cases). Accordingly, the order granting the City leave to file a claim for contribution for damages arising under Greene's federal claims is vacated.

### B. *State law claims*

Whether the City has stated a claim for contribution against Cohen for damages arising under Greene's state law claims presents a slightly more difficult question. When deciding whether a defendant has a right to contribution from another for damages incurred under state law, a district court must look to whether state law provides such a right. Id. at 214 (internal citations and quotation marks omitted). New York has codified contribution rights pursuant to C.P.L.R. § 1401. That rule has been interpreted as permitting "an action for contribution . . . between concurrent, successive, independent, alternative, and even intentional tortfeasors . . . who have caused the same injury to plaintiffs." Id. (citing Board of Ed. v. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 27-28 (1987); Nassau Roofing & Sheet Metal Co. v. Facilities Development Corp., 71 N.Y.2d 599, 603 (1988) (internal quotation marks omitted)). It

---

[4] The City points to the Third Circuit's decision in Miller v. Apartments & Homes of New Jersey, Inc., 646 F.2d 101 (3d. Cir. 1981) in support of its position that a contribution claim can be maintained in a section 1983 action. Miller is, of course, not binding on this Court, and its continued viability in light of subsequent Supreme Court rulings has been questioned. See e.g., Mathis, 607 F. Supp. 2d at 428 n.17. The Court declines to adopt its holding.

is the "same injury" requirement that causes the Court to question whether the City has stated a claim.

The essence of Greene's claim is that the City intentionally suppressed exculpatory evidence, falsely arrested and maliciously prosecuted him. The City argues that if it were found liable on those claims, Cohen would be liable to it because he negligently failed to discover the very same evidence that the City intentionally withheld and concealed, thereby causing or contributing to Greene's "false conviction." See e.g., Opp. Br. at 13 ("had Mr. Cohen requested a copy of the audio tape of the Kim interview at the time of the prosecution, Mr. Cohen undoubtedly would have discovered the mistakes contained in the transcript").

The Court, however, has serious doubts that Cohen's negligence could be found to have caused or contributed to the "same injury" that the City caused by falsely arresting and maliciously prosecuting Greene. See Crews, 612 F. Supp. 2d at 216 ("[T]here is substantial doubt under New York law over whether . . . the purported tort of malpractice of a criminal defense attorney could be found to cause the 'same injury' to his client as that of the County defendants who are alleged to have wrongfully arrested and maliciously prosecuted the client") (citing Nassau Roofing & Sheeting Metal Co., 71 N.Y.2d at 603 ("Section 1401's 'essential requirement' is that the parties contributed to the same injury")). An action for false arrest protects the personal interest of freedom from restraint of movement and damages for false arrest will be measured only to the time of arraignment or indictment, whichever occurs first. See Broughton v. State of New York, 37 N.Y.2d 451, 456, 459 (1975). As Greene's defense counsel, Cohen could have not possibly caused or contributed to the injuries that Greene suffered as a result of the City's false arrest. See Crews, 612 F. Supp. 2d at 217 (holding that it is unlikely that the injury to plaintiff caused by his defense attorney's purported negligence "namely, the

loss of certain legal rights in connection with the judicial proceedings" is the "same injury as the one allegedly caused by the County defendants in connection with [plaintiff's] arrest and indictment, even if some of the damages might be the same"). An action for malicious prosecution protects the personal interest of freedom from unjustifiable litigation; the essence of malicious prosecution is the perversion of proper legal procedures by the government. See Broughton, 37 N.Y.2d at 456. The Court finds it difficult to see how Cohen could have caused or contributed to the injury caused by the City, i.e., the taking away of Greene's personal interest of freedom resulting from an unjustifiable litigation. Indeed, the Court is not surprised that the City has failed to point to "a single case in the history of New York jurisprudence where a contribution claim has been permitted against a criminal defense attorney under these circumstances – namely, municipal / law enforcement defendants being sued . . . for an allegedly wrongful arrest and prosecution, who in turn seek contribution for such torts from the plaintiff's criminal defense attorney for alleged malpractice in connection with the prosecution." Crews, 612 F. Supp. 2d at 217.

In any event, the Court finds that it need not ultimately decide whether New York would recognize the City's third-party claim because the Court shares Cohen's concern about the potential for delay, confusion and prejudice if it were litigated in this proceeding. See id. After spending more than 22 years in prison, Greene's case against the City should be resolved as quickly as possible and without the delays of protracted discovery and motion practice that would accompany the third-party litigation. See id. Further, Greene's case raises serious and complicated constitutional and civil rights claims and it would be unfair to him if the City's claim injected any additional confusion at trial. See id.; see also Mathis, 607 F. Supp. 2d at 429 ("[C]ontribution . . . claims may actually hinder a plaintiff's ability to retain relief under the Civil

11

Rights Acts by inject[ing] issues into the litigation which could interfere with the prompt and orderly trial of such cases") (quoting Koch, 869 F. Supp. at 1041). Finally, while the potential prejudice to Greene in allowing the third-party claim to go forward is substantial, the City would not be prejudiced in any real way by vacation of Judge Pollack's order granting leave to implead; in the event that the City is ultimately found liable on Greene's state law claims, the City can assert a contribution claim against Cohen in state court. See Ispat Inland, Inc., v. Kemper Environmental Ltd., 2006 WL 3420654, at *4 (S.D.N.Y. Nov. 28, 2006); Int'l Medical Tech., Inc., 203 F.R.D. at 91. Indeed, resolution of the apparently open question of whether New York recognizes the right to contribution under these circumstances, and the potential far-reaching implications if that question is answered in the affirmative, is best left to the state courts to address in the first instance.

## CONCLUSION

For the reasons stated above, Judge Pollak's September 5, 2008 order granting the City leave to implead Cohen is vacated and the City's third-party complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
May /2, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge