UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CY GREENE,

                    Plaintiff,

          -against-

CITY OF NEW YORK, et al.,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM & ORDER**

08 CV 243 (RJD)

On January 16, 2008, plaintiff Cy Greene filed this action, seeking damages from the City

of New York ("City"), New York City Transit Authority ("Transit Authority"), detectives or

former detectives Michael Norrito and Joseph Tumbarello, in their individual and official

capacities, former Assistant District Attorney Robert Sullivan, in his individual and official

capacities, Kings County District Attorney Charles J. Hynes, in his official capacity, and other

unidentified defendants, resulting from plaintiff's alleged false arrest and false imprisonment.

Plaintiff brings claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, various

provisions of the New York State Constitution, as well as claims of malicious prosecution,

negligence of individual defendants, and negligence on the part of the City and Transit Authority.

On June 17, 2011, plaintiff filed a motion ("Mot.") seeking to compel defendants to

produce, in unredacted form, all documents subpoenaed in connection with a deposition noticed

for non-party witness Phyllis Mintz, an Assistant District Attorney ("ADA") in Kings County; in

the alternative, plaintiff's motion sought to compel defendants to submit two sets of the

documents to the Court for in camera review, one set unredacted and the other redacted. In their

response to plaintiff's motion, filed on July 6, 2011 ("Opp."), defendants argued that many of the

1

documents requested by plaintiff are protected by the attorney work product, deliberative process, and attorney client privileges.[1]

On July 13, 2011, the Court held a hearing on plaintiff's motion, and on October 7, 2011, the Court issued an Order granting in part and denying in part plaintiff's motion. Specifically, the Court Ordered defendants to produce all purportedly privileged documents to the Court for in camera review and to indicate, in a letter accompanying the documents submitted to the Court, any claims that information contained in a purportedly privileged document is available through less intrusive means. (Ord. at 19). The Court also Ordered defendants to provide all grand jury minutes listed on defendants' privilege log, and it directed plaintiff to submit a subpoena to the Court to compel production of certain criminal history records for in camera review. (Id. at 20).

On October 17, 2011, pursuant to the Court's October 7, 2011 Order, defendants submitted a set of documents subject to privilege claims, along with an index identifying each document and proposing less intrusive sources of the same information available to plaintiff ("the index"). On the same date, defendants produced a document containing grand jury minutes from plaintiff's underlying criminal case. Finally, on October 25, 2011, the Court received the criminal history records requested by plaintiff. The Court has reviewed, in camera, all of the documents submitted by defendants.

---

[1]Although defendants originally asserted attorney-client privilege claims as to five documents on the privilege log (documents 30, 78, 79, 117, and 118), all of these claims have since been resolved. Defendants withdrew their assertion of attorney-client privilege as to the latter four documents in their opposition to plaintiff's motion; and, in its October 7, 2011 Order ("Ord."), the Court held that defendants had made the requisite showing to invoke the attorney-client privilege with respect to document 30. (See Ord. at 13-14).

## BACKGROUND

On June 14, 1983, John Choi ("Choi") was robbed and murdered at the subway station at Nostrand and Church Avenue in Brooklyn. (Compl.[2] ¶¶ 22, 51-57). Detectives Norrito and Tumbarello were assigned to lead the investigation, and ADA Sullivan was the ADA initially assigned to the case. (Compl. ¶¶ 86, 87). On June 24, 1983, plaintiff was indicted for Choi's murder and robbery, along with co-defendant Larry Williams. (Id. ¶ 23). On May 8, 1985, following a jury trial held before Justice Michael L. Pesce (id. ¶ 25), plaintiff was convicted of felony murder and second degree robbery. (Mot. at 8). During the criminal trial, Jae Hark Kim testified as the single eyewitness and identified Greene as the stabber. (Id.) However, plaintiff alleges that "as established in the criminal case, it was information obtained from one Mark Best that purportedly first led the detectives, defendants Norrito and Tumbarello in this civil case, to seek out and arrest Cy Greene . . . ." (Id.) Plaintiff asserts that he "served over 22 ½ years in prison for a crime he did not commit." (Id.)

Over the years following his conviction, "Greene had unsuccessfully brought a number of post-conviction proceedings, either represented by other counsel or *pro se*." (Id. at 9). In December 2003, Greene commenced a Criminal Procedure Law § 440.10 ("440") proceeding seeking a new trial. (Id.) In January 2006, the trial court vacated the conviction "for ineffectiveness of counsel, essentially for failure to investigate and obtain information from numerous available civilian witnesses who had given police descriptive information about suspects . . . and who could have given favorable testimony on Cy Greene's behalf . . . ." (Id.) The Appellate Division, Second Department affirmed the decision. On June 11, 2007, all

---

[2]Citations to "Compl." refer to plaintiff's Complaint, filed January 16, 2008.

charges "were dismissed on the District Attorney's motion." (Id.)

Plaintiff's Complaint "alleges numerous wrongful acts and <u>Brady</u> violations by the main defendants and others with whom they conspired." (Id.) According to plaintiff, Kings County District Attorneys (KCDA) and New York City Police Department (NYPD) officers knew (1) information about Greene and other suspects, and (2) information as to which ADAs and police officers were involved and the date at which they received information. (Id.) Plaintiff asserts that such information "is important for plaintiff's case and solely within the KCDA's control in their office files . . . ." (Id. at 10).

The first alleged <u>Brady</u> violation involves "the 'tall guy' description withheld in the criminal case." (Id.) Plaintiff claims that Jae Hark Kim "initially told police the stabber was 6 feet tall and later said 5 feet 9/five feet 8 ½ inches tall," while Greene "was no taller than 5'2"." (Id.) Kim's tape recorded precinct statement "was not provided to defense counsel," and the "tall guy" description was omitted from Kim's precinct interview transcript in what plaintiff contends was a "monumental instance of police and prosecutorial misconduct." (Id. at 11).

Another significant <u>Brady</u>/<u>Giglio</u> violation alleged in the Complaint involves multiple instances of police and prosecutorial misconduct including: 1) "failure to disclose that a prime suspect, Mark [Best's] brother Lenny Best, had been identified on June 14, 1983 . . . as having fled" from the crime scene immediately after the crime; 2) "falsification of a 'DD-5' follow-up police report . . ."; and 3) "failure to disclose that Lenny Best escaped from a police car when he was being taken in for questioning on June 15, 1983." (Id. at 11-12). The Complaint alleges that Mark Best's "false identification of Green was the product of improper police pressure, coercion and inducements," and plaintiff cites examples of Norrito's false testimony. (Id. at 12-13).

A third significant Brady/Giglio violation alleged in the Complaint involves a DD-5 police report concerning the cabdriver that was provided to the defense in the criminal trial. The report "failed to include the Spanish-speaking and height information [of three suspects seen running from the crime scene], which was never disclosed in connection with the criminal trial and was first learned by current counsel during our 440 proceeding." (Id. at 14).

In the Complaint, plaintiff alleges additional Brady and merit issues "which are relevant to the privilege log issues," including wrongfully obtained photo and lineup identifications, an undisclosed material witness, DNA evidence of actual innocence,[3] and "racial discrimination against African Americans and related class animus." Moreover, plaintiffs allege that the City is liable pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) "because of unconstitutional policy, procedures and practices, most particularly relating to failure to train, supervise and discipline [ADAs] and police regarding their obligations pursuant to Brady v. Maryland . . . ." (Id. at 14-15).

## DISCUSSION

I.    Legal Standard

A.    Relevance

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal court cases. Rule 26(b)(1) "authorizes discovery of any 'nonprivileged matter that is relevant to any party's claim or defense. . . .Relevant information need not be admissible at the trial if the

---

[3] Plaintiff states that "we learned during our 440 proceeding that DNA recovered from the knife handle did not match Greene." (Mot. at 14).

discovery appears reasonably calculated to lead to the discovery of admissible evidence.'"

Garcia v. Benjamin Group Enterprise Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting

Fed. R. Civ. P. 26(b)(1)). "'Relevance' under Rule 26 'has been construed broadly to encompass

any matter that bears on, or that reasonably could lead to other matter that could bear on any

issue that is or may be in the case.'" Crosby v. City of New York, 269 F.R.D. 267, 282

(S.D.N.Y. 2010) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

B.    Attorney Work Product Protection

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides the general rule that

material prepared by or at the request of an attorney in anticipation of litigation is not subject to

discovery. See Fed. R. Civ. P. 26(b)(3). The work product doctrine "provides qualified

protection for materials prepared by or at the behest of counsel in anticipation of litigation or for

trial." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383 (2d

Cir. 2002). Among other things, the work product doctrine protects "'the files and the mental

impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda,

correspondence . . . and countless other tangible and intangible ways'" prepared in anticipation of

litigation. A Michael's Piano, Inc. v. Fed. Trade Comm'n, 18 F.3d 138, 146 (2d Cir.) (quoting

Hickman v. Taylor, 328 U.S. 495, 510-11 (1947)), cert. denied, 513 U.S. 1015 (1994). The Rule

states: "Ordinarily, a party may not discover documents and tangible things that are prepared in

anticipation of litigation or for trial . . . ," Fed. R. Civ. P. 26(b)(3)(A), and provides for discovery

of work product materials only upon a showing that the party seeking discovery "has substantial

need for the materials to prepare its case and cannot, without undue hardship, obtain their

substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); see also In re Grand Jury

Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007), cert. denied, Doe v. U.S., 553

U.S. 1094 (2008); Jean v. City of New York, No. 09 CV 801, 2010 WL 148420, at *2 (E.D.N.Y.

Jan. 12, 2010); The Shinnecock Indian Nation v. Kempthorne, 652 F. Supp. 2d 345, 364

(E.D.N.Y. 2009).

There are generally two types of work product considered by the courts in determining

whether disclosure is warranted: factual work product, which may include factual material

obtained by the attorney during the course of a factual investigation; and "so-called 'core' work

product, which includes the 'mental impressions, conclusions, opinions or legal theories of an

attorney.'" Jean v. City of New York, 2010 WL 148420, at *2. Core work product containing

the mental impressions of an attorney is, in this circuit, entitled to more stringent protection, see

United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir 1998), and "at a minimum such material

is to be protected unless a highly persuasive showing [of need] is made." Id. at 1204; see also

Jean v. City of New York, 2010 WL 148420, at *2. This is because "any slight factual content

that such items may have is generally outweighed by the adversary system's interest in

maintaining the privacy of an attorney's thought processes and in ensuring that each side relies

on its own wit in preparing their respective cases." Sporck v. Peil, 759 F.2d 312, 316 (3d Cir.)

(citations omitted), cert. denied, 474 U.S. 903 (1985).

"A contemporaneous factual memorandum memorializing the circumstances of the

[incident] does not become attorney work product solely because the [incident] may thereafter

lead to litigation." Robbins v. Chase Manhattan Bank, N.A., No. 97 CV 676, 1998 WL 106152,

at *1 (S.D.N.Y. Mar. 9, 1998) (citing Smith v. Harmon Group, Inc., No. 90 CV 3348, 1992 WL

8176, at *4 (S.D.N.Y. Jan. 13, 1992)). In Smith v. Harmon Group, Inc., the document at issue

was claimed to have been "prepared for and under the direction of counsel in anticipation of potential litigation," as is claimed here, but the court found that "[t]he content of the document does not support this claim. It is a straightforward narrative account of what was said and done . . . the document 'does not relay any legal advice but merely discusses factual circumstances.'" Smith v. Harmon Group, Inc., 1992 WL 8176, at *2. The court therefore decided that "[i]n light of the possibility that the parties may rely on different versions of the events on the day of the [incident], raising issues of credibility and accuracy of recollection, plaintiff is entitled to defendants' contemporaneous factual record of their conversations with him." Id. (citing Grossman v. Schwarz, 125 F.R.D. 376, 389 (S.D.N.Y. 1989)). Another court also found that "[a] fair determination of the threshold [issues in the case] can not be made unless [the requesting party] is allowed [access to] the objective factual information available to [the other party]." In re Pfohl Bros. Landfill Litig., 175 F.R.D. 13, 25 (W.D.N.Y. 1997).

C.      Deliberative Process Privilege

        The deliberative process privilege precludes disclosure of "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" National Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (quoting Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002), cert. denied, 538 U.S. 1056 (2003)). To be subject to the privilege, a document must be both "predecisional" and "deliberative." See, e.g., Davis v. City of N.Y., No. 10 Civ. 699, 2011 WL 1742748, at *2 (S.D.N.Y. May 5, 2011). "[P]urely factual material," as well as "materials related to the explanation, interpretation or application of an existing policy, as opposed to the formulation of a new policy," are not subject to the privilege. Id.

Documents are considered "predecisional" if they are "prepared in order to assist an agency decisionmaker in arriving at his decision." National Council of La Raza v. Dep't of Justice, 411 F.3d at 356 (quoting Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)). "Such materials include 'recommendations, draft documents, proposals, suggestions, and other subjective documents [that] reflect the personal opinions of the writer rather than the policy of the agency.'" Davis v. City of N.Y., 2011 WL 1742748, at *2 n.19 (quoting Grand Cent. P'ship v. Cuomo, 166 F.3d at 482).

Documents are "deliberative" if they are "'actually . . . related to the process by which policies are formulated.'" Id. (citing National Council of La Raza v. Dep't of Justice, 411 F.3d at 356). Courts considering whether a document should be deemed deliberative analyze "'whether the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.'" Id. (quoting Grand Cent. P'ship v. Cuomo, 166 F.3d at 482).

A determination that documents qualify for the deliberative process privilege does not end the inquiry. "[W]hen the existence of privilege is established, there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to privileged information." MacNamara v. City of N.Y., 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (quotations omitted). Factors weighing in favor of disclosure include the following:

> '(1) the relevance of the requested materials to the [requesting party's] case, (2) the importance of the materials to the [requesting party's] case, including the availability of the information from alternative sources, (3) the strength of the [requesting party's] case . . . , and (4) the importance [of disclosure] to the public interest.'

<u>Davis v. City of N.Y.</u>, 2011 WL 1742748, at *2 (quoting <u>MacNamara v. City of N.Y.</u>, 249

F.R.D. at 80. Factors weighing against disclosure include "(1) threats to public safety, (2) the

invasion of government officials' privacy, (3) the weakening of government programs, and (4)

the chilling of internal candor." <u>Id.</u>, at *3.

An assertion of the deliberative process privilege must be made "by the head of the

agency after personal consideration of the allegedly privileged material," or by a "subordinate

with high authority" to claim the privilege pursuant to guidelines issued by the agency.

<u>Resolution Trust Corp. v. Diamond</u>, 137 F.R.D. 634, 641 (S.D.N.Y. 1991).

II.     <u>Analysis</u>

A.      <u>Privilege Claims</u>

    1.      <u>Documents Relating to Pre-Trial and Trial Preparation for People v. Green</u>

Defendants have submitted forty-seven documents purportedly relating to pre-trial and

trial preparation for <u>People v. Green</u>, the trial in which plaintiff was convicted of felony murder

and first degree robbery for the stabbing death of John Choi ("Redweld A").[4] Defendants assert

attorney work product protection for all of the documents in Redweld A, and they additionally

assert "attorney work product-opinion"[5] for thirty-six of the documents.

---

[4]Defendants have dated eight of these documents with dates ranging from "after
[November 28, 1983]" until "after [January 31, 1985]"; two documents are dated by month and
day, but the year is unknown; for the remaining thirty-seven documents, defendants have
indicated that the date of each document is unknown.

[5]It is unclear whether, by claiming "attorney work product-opinion," defendants intend to
assert a separate protection from the attorney work product protection or if they are merely
specifying which documents contain "core" work product as opposed to factual work product.
<u>Jean v. City of New York</u>, 2010 WL 148420, at *2. The Court is unaware of any basis for a

10

a.    Documents A-1 and A-5

Documents A-1 and A-5 are copies of the Notice of Alibi for Barbara Nicholas, Cy
Green's sister-in-law and alibi witness (A-1), and Kevin Davis (A-5). Both documents contain
ADA Douglas Kallen's handwritten notes regarding the underlying criminal trial. Defendants
claim that these documents are protected by the attorney work product protection and that
Document A-1 contains core attorney work product. Defendants' index indicates that the
Notices themselves, without the handwritten attorney notes, are publically available filings.

Based on a review of these document, it appears that the underlying documents and much
of the information contained in the handwritten notes are either publically available or "core"
work product. The documents also contain a small number of illegible notes, and it does not
appear that they contain information relevant to plaintiff's case. Accordingly, defendants are not
required to produce Documents A-1 and A-5 at this time.

b.    Documents A-2 and A-44

Documents A-2 and A-44 consist of handwritten notes relating to the polygraph test and
alibi of Cy Greene's co-defendant Larry Williams. Document A-2 is addressed to ADA
Plaszner. Defendants claim that these documents contain core attorney work product and are
protected under the attorney work product protection.

The Court finds that these documents may be relevant to plaintiff's case and that plaintiff
has established that he has a substantial need for the work product contained in these documents

---

separate "attorney work product-opinion" protection in this jurisdiction's case law. Accordingly,
the Court's analysis of whether the documents produced by defendants are protected proceeds
with the understanding that, where defendants have claimed "attorney work product-opinion,"
defendants' intent was to draw the Court's attention to "core" work product.

and an inability to obtain their substantial equivalent without undue hardship. Accordingly, defendants are directed to produce Documents A-2 and A-44.

        c.      Document A-3, A-4, A-9, A-11, A-12 and A-45

Documents A-3, A-4, A-9, A-11, A-12, and A-45 are described as ADA Kallen's handwritten notes, conveying his opinions and mental impressions regarding Dorothy Williams, the mother of Larry Williams (A-3 and A-45), Sergio Azona, a man who was interviewed by police and provided information relating to Larry Williams' alibi on the night of John Choi's stabbing (A-4), and Mark Best (A-9, A-11, and A-12). Defendants claim that these documents contain core attorney work product[6] and are protected under the attorney work product protection. The index indicates that plaintiff's counsel has the audio recording and transcript of the interview upon which Document A-3 is based and that most of the information contained in Document A-9 is available less intrusively through the criminal history records of Mark Best.

Document A-3 appears to contain factual information that can be accessed through the audio recording and transcript of the interview with Dorothy Williams; since the document contains "core" attorney work product and litigation strategy, it is not subject to disclosure. Document A-45 similarly contains only a small amount of factual information, which is not crucial to plaintiff's claim in the instant case. Plaintiff has not made an adequate showing of substantial need and an inability to obtain the contents of Documents A-3 and A-45 elsewhere without undue hardship. However, because they could indicate what information about plaintiff's criminal case ADA Kallen was aware of at the time, Documents A-4, A-9, and A-11 may contain information that is relevant to the contentions made by plaintiff in this litigation.

---

[6]Except for Document A-12.

With respect to Document A-12, defendants are directed to explain whether any parts of this document have been redacted, and, if so, why. Further, defendants are Ordered to provide a more specific description of this document and explain why these notes should not be disclosed.

Accordingly, defendants are required to produce Documents A-4, A-9, and A-11, but they need not produce Documents A-3 and A-45 at this time. Defendants are also Ordered to provide further information about Document A-12 as directed above.

### d. Documents A-6 and A-39

Documents A-6 and A-39 consist of handwritten notes, believed to be written by ADA Kallen and Plaszner, respectively, which purportedly convey the attorneys' mental impressions and opinions of witness Mark Best. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection. Defendants also contend that plaintiff can obtain any factual information contained in Document A-6 from the DD-5 of Mark Best, the precinct interview of Mark Best, and the June 21, 1983 lineup record.

Although Documents A-6 and A-39 are comprised, for the most part, of facts that are likely accessible through other documents that have been produced in this litigation and of some "core" attorney work product, considering the length of time that has passed since plaintiff's criminal case and plaintiff's need to depose witnesses, the Court finds that plaintiff has established a substantial need for the work product contained in these documents.

Accordingly, defendants are Ordered to produce Documents A-6 and A-39.

### e. Document A-7

Document A-7 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to a telephone call with

defense attorney Jeff Richman. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Based on a review of this document, which contains primarily core work product and litigation strategy, the attorney work product protection applies. Accordingly, defendants are not required to produce Document A-7 at this time.

      f.     Document A-8

Document A-8 is a copy of a January 31, 1985 letter from Lewis Cohen, plaintiff's prior counsel, to Judge Joseph Lombardo requesting that plaintiff be moved to a different correctional facility. This copy of the letter contains the handwritten notes of ADA Kallen. Defendants claim that this document is protected by the attorney work product protection.

This document contains only limited handwritten notes, which are unlikely to provide plaintiff with information useful to his case. Accordingly, the Court finds that plaintiff has not established a substantial need for this document, and defendants are not required to produce Document A-8 at this time.

      g.     Document A-10, A-13, and A-15

Documents A-10, A-13, and A-15 consist of handwritten attorney notes, believed to be written by ADA Kallen. The notes in Document A-10 regard December dates for upcoming testimony, and the notes in Document A-13 appear to be an outline of issues to raise during summation. Defendants claim that Document A-15 conveys opinions and mental impressions relating to strategies to be used in approaching various witnesses, respectively. Defendants claim that these documents are protected by the attorney work product protection and that Documents A-13 and A-15 contain core attorney work product.

14

Based on a review of these documents, the Court finds that Document A-10, which is clearly work product, contains no relevant facts that would require its production, and that Document A-13 is the type of core attorney work product that contains no facts, but merely the ADA's thoughts on how to best organize his summation. Accordingly, the defendants are not required to produce either Document A-10 or A-13. As for Document A-15, it is not entirely clear who prepared these notes or the factual basis underlying the notes. Considering the time that has passed since this document was created and plaintiff's need for evidence concerning the broader context of the alleged misconduct, the Court finds that plaintiff has shown a substantial need for this document. Accordingly, defendants are required to produce Document A-15.

> h.    Document A-14

Document A-14 consists of handwritten attorney notes, believed to be written by ADA Kallen, regarding plaintiff and Larry Williams. Defendants claim that this document is protected by the attorney work product protection.

Considering the minimal information contained in this document, the Court finds that plaintiff does not have a substantial need for disclosure. Accordingly, defendants are not required to produce Document A-14 at this time.

> i.    Document A-16

Document A-16 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the serology report of John Choi. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. The index indicates that any factual information contained in the document can be less intrusively obtained in the serology report of

15

John Choi.

Based on a review of this document, the Court finds that it may contain information relevant to plaintiff's claims. Accordingly, defendants are directed to produce Document A-16.

      j.     Documents A-17 through A-19

Documents A-17 through A-19 consist of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the testimony of Jae Hark Kim, the man accompanying victim John Choi at the time of his murder, and resulting ideas for trial strategy. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection. With respect to document A-19, defendants claim that any factual information can be obtained from the UF-61 dated June 14, 1983, the DD-5 of Kim dated June 14, 1985, the report on the lineup conducted before Kim dated June 21, 1983, the precinct statement of Kim dated June 14, 1983, and minutes from the grand jury proceeding dated June 23, 1983.

Documents A-17 through A-19 may well contain information that is relevant to plaintiff's case. Plaintiff has made a showing of substantial need for the information contained in these documents that is adequate to overcome the public interest served by maintaining the confidentiality of ADA Kallen's notes. Accordingly, defendants are Ordered to produce Documents A-17, A-18, and A-19 to plaintiff's counsel.

      k.     Documents A-20 and A-21

Document A-20 consists of handwritten attorney notes, believed to be written by ADA Kallen in preparation for an opening statement, which purportedly conveys mental impressions and opinions relating to plaintiff's criminal case. One page of this fourteen page document

appears to have been written by someone other than ADA Kallen. Document A-21 consists of handwritten attorney notes, believed to be written by ADA Plaszner, purportedly conveying mental impressions and opinions about defendants and witnesses involved in plaintiff's criminal case. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection.

These documents may shed light on the broader context in which the alleged misconduct took place, as well as provide potentially useful handwriting samples for plaintiff to use in developing his case. Plaintiff's potential need for these documents is adequate to overcome the public interest served by maintaining the confidentiality of the ADA Kallen and Plaszner's notes. Accordingly, defendants are Ordered to produce Documents A-20 and A-21.

### 1. Document A-22

Document A-22 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to UF-61 and DD-5 reports. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. The index indicates that factual information contained in this document can be accessed by plaintiff in the UF-61 and DD-5 reports prepared by the NYPD.

Despite the fact that much of the factual information contained in this document is available to plaintiff elsewhere, the Court finds that plaintiff has shown of substantial need for notes from KCDA staff members who were involved in his criminal case. Accordingly, defendants are required to produce Document A-22.

### m. Document A-23

Document A-23 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the minutes of the Wade/Dunaway hearing. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. The index indicates that the factual information contained in this document can be accessed by plaintiff in the minutes from the December 14, 1984 Wade/Dunaway hearing.

Based on a review of this document, it appears that plaintiff has not shown that he can not obtain by other means, without undue hardship, the substantial equivalent of the information contained in this document. Accordingly, defendants are not required to produce Document A-23 at this time.

### n. Document A-24

Document A-24 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to Thomas Lee, John Choi's brother-in-law and the person who identified John Choi's body. Defendants claim that this document is protected by the attorney work product protection.

Based on a review of this document, it does not appear to contain information relevant to plaintiff's case. Accordingly, defendants are not required to produce Document A-24.

### o. Documents A-25 and A-26

Documents A-25 and A-26 consist of handwritten attorney notes, believed to be written by ADA Plaszner, purportedly conveying mental impressions and opinions relating to trial strategies and various witnesses. Defendants claim that these documents contain core attorney

18

work product and are protected by the attorney work product protection.

Although Document A-26 appears to contain only information that is available to plaintiff elsewhere, Document A-25 contains information about Kim's ability to identify plaintiff, which goes to the heart of plaintiff's claim. Accordingly, defendants are directed to produce Document A-25, but need not produce Document A-26 at this time.

      p.    Documents A-27 and A-28

Documents A-27 and A-28 consist of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to Sergeant Walsh's background and role in the case; defendants contend that Sergeant Walsh has not been accused of misconduct and that plaintiff has provided no support for requiring production of information relating to him. Defendants again claim that these documents contain core attorney work product and invoke the attorney work product protection to support their claim that these documents should be protected.

Based on a review of Document A-27, which consists of a proposed question and answer sheet for Sergeant Walsh and contains no factual information but merely litigation strategy, the Court sees no compelling reason to require defendants to disclose these portions of the document. However, Document A-28 contains information about the knife used in Choi's murder which may be relevant to plaintiff's case. Accordingly, defendants are Ordered to produce Document A-28.

      q.    Documents A-29, A-34, and A-35

Documents A-29, A-34, and A-35 consist of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the

questioning of various parties involved in the case, including Detectives Norrito (A-34, A-35) and Tumbarello (A-29, A-34), Mark Best (A-34), and Jae Hark Kim (A-34). Document A-35 also contains information about the investigation time line. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection.

Based on a review of these documents, the Court finds that these documents go to the heart of plaintiff's claim of misidentification and contain information regarding the ADA's knowledge at the time of the lineup that may be relevant to plaintiff's case and for which plaintiff has shown substantial need. Accordingly, defendants are required to produce Documents A-29, A-34, and A-35.

     r.     Documents A-30 and A-31

Documents A-30 and A-31 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions regarding the lineups leading to Cy Greene's identification as John Choi's stabber. Defendants state that document A-30 may have resulted from an interview with Detective Tumbarello. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection. The index indicates that the factual information contained in Document A-30 can be obtained by plaintiff in the June 21, 1983 lineup reports from the 76th Precinct.

These documents also contain information regarding the lineup (and photo array) that may shed light on plaintiff's claim in this case, and which plaintiff may be unable to obtain elsewhere. Accordingly, defendants are directed to disclose both Document A-30 and A-31. However, defendants may redact page KCDA-PRL 0000324 of Document A-31, which contains

only factual information already available to plaintiff.

### s. Document A-32

Document A-32 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the parties involved in plaintiff's criminal case, key events in the case, and strategy moving forward, including communications with other parties. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Based on a review of this document, the Court finds that the information contained on page KCDA-PRL 0000328 of this document may be relevant to plaintiff's case, but that the rest of the document, which contains primarily contact information for various witnesses, need not be disclosed. In short, defendants are Ordered to disclose page KCDA-PRL 0000328 of Document A-32.

### t. Document A-33

Document A-33 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the alibis of plaintiff and Larry Williams on the night of John Choi's stabbing. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Pages KCDA-PRL 0000334 and 0000335 of this document appear to contain litigation strategy for which plaintiff has not shown a substantial need. Pages KCDA-PRL 0000333 and 0000336 on the other hand, contain factual information that may support plaintiff's case. Accordingly, defendants are Ordered to produce pages KCDA-PRL 0000333 and 0000336 of Document A-33.

u.    Document A-36

Document A-36 consists of a handwritten attorney note, internal to the District Attorney's Office, from ADA Marc Ruskin to the Early Complaint Assessment Bureau ("ECAB"), requesting that ECAB proof an affidavit and insert notices in anticipation of grand jury proceedings. Defendants claim that this document is protected by the attorney work product protection.

Based on a review of this document, the Court finds that this document is protected by the attorney work product protection and plaintiff has not shown a substantial need for the information it contains. Accordingly, defendants are not required to produce Document A-36 at this time.

v.    Document A-37

Document A-37 consists of a handwritten attorney note, internal to the District Attorney's Office, believed to be written by ADA Plaszner to ADA Kallen regarding the unavailability of an alibi witness for co-defendant Larry Williams, Kevin Davis, whose car was unavailable. Defendants claim that this document is protected by the attorney work product protection.

Based on a review of this document, the information contained in this document is not relevant to plaintiff's case. Accordingly, defendants are not required to produce Document A-37 at this time.

w.    Document A-38

Document A-38 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to the status of the case, the defendants, and trial strategy, particularly the examination and cross-examination of

22

witnesses. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

The Court finds that the information contained in this document is relevant to plaintiff's case, and that plaintiff has shown a substantial need for Document A-38. Accordingly, defendants are Ordered to disclose Document A-38.

x.  Documents A-40, A-41, A-42, A-43, A-46, and A-47

Documents A-40 and A-41 consist of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions about Margaret Pilato (A-40) and John Castricone (A-41), two of the first police officers to respond to the scene of John Choi's murder. (Compl. ¶ 64). Document A-42 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions regarding videos of plaintiff and co-defendant Larry Williams, and the cross-examination of Barbara Nicholas, Cy Green's sister-in-law and alibi witness. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection. The index indicates that the factual information contained in Document A-42 can be accessed by plaintiff in the June 21, 1983 precinct statements of plaintiff and Larry Williams.

Document A-43 consists of a handwritten attorney note, internal to the District Attorney's Office, relating to a phone call from Queenie Jones, Larry Williams' grandmother, about Larry Williams. Defendants claim that this document is protected by the attorney work product protection.

Document A-46 consists of handwritten attorney notes, believed to be written by ADA Kallen, purportedly conveying mental impressions and opinions relating to potential cross-

examination questions for Patrick Palmer, who appeared in the lineup on June 21, 1983. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection.

Document A-47 consists of handwritten attorney notes, internal to the District Attorney's Office, regarding plaintiff's criminal history and known associates. Defendants claim that this document is protected by the attorney work product protection, and defendants' index indicates that plaintiff can obtain factual information contained in this document from plaintiff's criminal history report.

With respect to document A-42, although defendants claim that plaintiff can access the factual information contained therein in the relevant precinct statements, the statements do not address the cross-examination of Barbara Nicholas. For the sake of consistency, the Court finds that Document A-42 should be disclosed in its entirety. The Court also finds that plaintiff has established a substantial need for Document A-46. However, based on a review of the remaining documents, plaintiff has not shown substantial need for the information contained in Documents A-40, A-41, A-43, and A-47 and defendants are not required to produce these documents at this time.

2.      Documents Relating to Plaintiff's First Motion to Vacate His Conviction

Defendants have submitted seven documents purportedly relating to plaintiff's first 440 motion to vacate his conviction in People v. Green ("Redweld B").[7] Defendants assert attorney work product protection for all of the documents in Redweld B and "attorney work product-

_____

[7]The documents in Redwell B are dated from "after [February 22, 1990]" until November 18, 1991.  Document B-7 is dated "approximately 1991."

opinion" for six of the documents. With respect to the documents in Redwell B, defendants contend that the government's response to plaintiff's 440 motion is not at issue in this litigation, and plaintiff has not established substantial need to access attorney work product pertaining to it.

a.    Documents B-1 through B-3

Documents B-1 through B-3 are copies of the Defendant-Appellant's February 22, 1990 Reply Brief (B-1), the April 12, 1991 Affirmation (B-2 and B-3) and the April 16, 1991 Notice of Motion filed by Michael Joseph on behalf of plaintiff (B-2), as well as the February 26, 1991 Affidavit of Mark Best (B-3), which either contain underlining or handwritten attorney notes purportedly conveying mental impressions and opinions regarding plaintiff's first 440 motion. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection. Defendants' index indicates that the underlying filings have already been produced to plaintiff's counsel under the bates numbers NYC HHR 025931 through NYC HHR 025938, NYC HHR 022488 through NYC HHR 022493, and NYC HHR 022489 through NYC HHR 022495, respectively.

Document B-1 does not contain information relevant to plaintiff's case. The handwritten notes on Document B-2 are illegible, but clearer copies of the same notes are provided in Document B-3, and the Court finds that plaintiff has shown a substantial need for these notes. Accordingly, defendants are required to produce Document B-3, but Documents B-1 and B-2 need not be disclosed at this time.

b.    Document B-4

Document B-4 is a copy of ADA Jane Sutley's June 7, 1991 Affidavit in Opposition to Motion to Vacate Judgement and the accompanying Memorandum of Law, which contain

handwritten attorney notes purportedly conveying mental impressions and opinions regarding plaintiff's first 440 motion. Defendants claim that this document is protected by the attorney work product protection, and defendants' index indicates that the underlying filings have already been produced to plaintiff's counsel under bates numbers NYC HHR 028238 through NYC HHR 028250.

Based on a review of this document, Document B-4 contains only extremely limited notes, which do not appear to be relevant to plaintiff's case. Accordingly, defendants are not required to produce Document B-4.

        c.      Document B-5

Defendants have provided three drafts of Document B-5, which is a memorandum, internal to the District Attorney's Office, sent from ADA Jane Sutley to ADA Marianne Crosley, purportedly conveying mental impressions and opinions regarding plaintiff's first 440 motion. Defendants again claim that these documents contain core attorney work product and are protected by the attorney work product protection.

Based on a review of this document, it does not contain information relevant to plaintiff's case. Accordingly, defendants need not produce Document B-5.

        d.      Documents B-6 and B-7

Defendants have provided duplicate versions of Document B-6, which is a memorandum from ADA Jane Meyers to ADA Ed Boyar, purportedly conveying mental impressions and opinions regarding plaintiff's first 440 motion. Defendants' index indicates that the factual information in the memorandum is available less intrusively by reference to the case documents, hearing transcripts, the appeal record, and the 440 hearings. Document B-7 consists of

handwritten attorney notes, purportedly conveying attorney work product about individuals involved in plaintiff's criminal case and mental impressions and opinions regarding expected testimony in plaintiff's first 440 motion. The index indicates that plaintiff can obtain any factual information in these notes from the 440 hearing transcripts and the criminal history reports of Mark Best, Leonard Best, and Joseph Ross.[8] Once again, defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection.

Considering the lack of relevant information contained in these documents, the Court finds that Documents B-6 and B-7 should not be disclosed.

3.    Documents Relating to Plaintiff's Second Motion to Vacate His Conviction

Defendants have submitted five documents purportedly relating to plaintiff's second 440 motion to vacate his conviction ("Redweld C").[9] Defendants assert attorney work product protection for all of the documents in Redweld C, "attorney work product-opinion" for four of the documents, and deliberative process privilege for one document. With respect to the Documents in Redwell C, defendants contend that the government's response to plaintiff's second 440 motion is not at issue in this litigation and that plaintiff has not established a substantial need for attorney work product regarding that motion.

a.    Document C-1

Document C-1 is a copy of ADA Appelbaum's September 14, 1992 Affidavit in Opposition to Defendant's Motion to Vacate Judgment, which contains handwritten attorney

---

[8]According to plaintiff's Complaint, Joseph Ross is one of the people identified by witness Eric Head, and was interviewed by Detectives Norrito and Tumbarello at the 67th Precinct on June 15, 1983. (Compl. ¶ 173).

[9]The documents in Redwell C are dated from September 14, 1992 until February 4, 1993.

notes regarding the litigation that was ongoing at the time. According to defendants, this document was used in preparing the People's response to plaintiff's second 440 motion. In addition to defendants' objection on the basis of relevance, defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. The index indicates that the underlying Affidavit has already been produced to plaintiff under bates number NYC HHR 022008 through NYC HHR 022028. Defendants additionally contend that, to the extent that the notes reflect statements made during a January 8, 1993 court conference on the 440 motion, the minutes of that conference would be a less intrusive means of obtaining the same information.

The underlying document in Document C-1 is publically available, but the handwritten notes in Document C-1 are relevant to the investigation of plaintiff's criminal trial, for which plaintiff has shown substantial need. Accordingly, defendants must produce Document C-1.

      b.     Document C-2

Document C-2 consists of handwritten attorney notes, believed to be written by ADA Mintz, purportedly conveying mental impressions and opinions concerning arguments made in 1991 and 1992 in relation to plaintiff's 440 motion. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Based on a review of this document, it does not contain information relevant to plaintiff's case. Accordingly, defendants need not produce Document C-2 at this time.

      c.     Document C-3

Defendants have provided duplicate copies of Document C-3, which is a memorandum, internal to the District Attorney's Office, purportedly conveying mental impressions and opinions

on the status of plaintiff's second 440 motion and the viability of various legal arguments in the case. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product and deliberative process privileges. Defendants further assert that, to the extent Document C-3 contains factual summaries of the crime, plaintiff's conviction, and subsequent appeals, the information could be obtained through less intrusive means in the original police files, court transcripts, court dockets, and submitted appeal papers.

This memorandum describes a conference with Judge Pesce, and it indicates that some of Judge Pesce's statements were made off the record. Therefore, some of the information contained in this document may not be reflected in the transcript, contrary to defendants' contention. Accordingly, defendants must produce Document C-3.

    d.  Document C-4

Document C-4 is a fax transmittal sheet related to an unidentified document with limited notes written by ADA Appelbaum. Defendants claim that this document is protected by the attorney work product protection.

The relevance of this document to plaintiff's case is not clear, and the Court finds that Document C-4 should not be disclosed.

    e.  Document C-5

Document C-5 consists of handwritten attorney notes, internal to the District Attorney's Office, concerning the location of Mark Best and Larry Williams. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Based on a review of this document, plaintiff has not made a showing of substantial need

to obtain the information in Document C-5. Accordingly, defendants are not required to produce Document C-5 at this time.

4.    <u>Documents Relating to Plaintiff's Third Motion to Vacate His Conviction</u>

Defendants have submitted eight documents purportedly relating to plaintiff's third 440 motion to vacate his conviction ("Redweld D").[10] Defendants contend that the government's response to plaintiff's third 440 motion is not at issue in this litigation and that plaintiff has not established a substantial need for attorney work product regarding that motion. Specifically, defendants note that plaintiff's third 440 motion alleged that an unusual occurrence report ("report"), allegedly discovered by plaintiff during a Freedom of Information Law (FOIL) request, had been withheld from plaintiff's attorney at trial. According to defendants, Judge Michael Pesce denied plaintiff's 440 motion and ruled that the unusual occurrence report was a forgery. Defendants claim that plaintiff has since admitted under oath that he forged the report. Defendants argue that, since the forged unusual occurrence report and the government's response to it are not mentioned in plaintiff's Complaint in this civil action, plaintiff does not have a substantial need for related documents.

Defendants assert attorney work product protection for all of the documents in Redweld D, "attorney work product-opinion" for three of the documents, and deliberative process privilege for one document.

a.    <u>Documents D-1 through D-3</u>

Document D-1 consists of a fax exchange between ADA Lewis and Sergeant Deleon, in

---

[10]The documents in Redwell D are dated from May 27, 1994 until March 14, 1995. Document D-7 is dated "after [August 1, 1986]; likely during 1994," and document D-8 is dated "after [January 12, 1995]."

which ADA Lewis requests assistance in locating documents in connection with plaintiff's third 440 motion. Documents D-2 and D-3 consist of handwritten transmittal notes indicating that someone from the NYPD Legal Bureau had called ADA Lewis. Defendants claim that these documents are protected by the attorney work product protection.

Document D-1 appears to be the "forged report" described above, but if it is not, it is clearly relevant. If it is the forged report, plaintiff presumably has it already and it is unclear why defendants have asserted a privilege. Documents D-2 and D-3, however, do not contain any information that is likely to lead to discovery of admissible evidence in plaintiff's case. Accordingly, defendants are Ordered to produce Document D-1 but need not produce Documents D-2 and D-3 at this time.

### b.    Document D-4

Document D-4 consists of handwritten notes, believed to be written by ADA Kallen, purportedly consisting of work product, including a phone message for John Best, notes concerning Mark Best's travel arrangements, and notes relating to his mother, Diane Best. Defendants claim that this document is protected by the attorney work product protection.

Document D-4 is of questionable relevance. However, given that the documents in D-4 all appear to be dated 1985 rather than 1995 as the index states, Document D-4 may have more significance than defendants attribute to it. Accordingly, defendants are Ordered to produce Document D-4.

### c.    Documents D-5 through D-7

Document D-5 consists of two memoranda, internal to the District Attorney's Office, purportedly conveying ADA Lewis' mental impressions and opinions relating to plaintiff's third

31

440 motion and the "Unusual Occurrence Report" which plaintiff claimed was "newly discovered." Defendants claim that this document contains core attorney work product and is protected by the attorney work product and deliberative process privileges.

Document D-6 is an unsent draft of a letter from ADA Appelbaum to Sergeant William J. Matusiak of the NYPD Legal Bureau, FOIL Unit. The stated purpose of the letter is to request records in preparation for the People's response to plaintiff's third 440 motion. Defendants claim that this document is protected by the attorney work product protection.

Document D-7 is a page of handwritten notes regarding plaintiff's third 440 motion. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Document D-8 is a copy of the January 12, 1995 decision issued by Judge Pesce, which contains handwritten attorney notes, purportedly conveying mental impressions and opinions regarding plaintiff's third 440 motion. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. The index indicates that the underlying document, without attorney notes, is publically available.

Based on a review of these documents, they do not appear to contain information for which plaintiff has shown a substantial need or an inability to obtain elsewhere without undue burden. Accordingly, defendants need not produce Documents D-5, D-6, D-7, and D-8.

     5.    <u>Documents Relating to Plaintiff's Fourth Motion to Vacate His Conviction</u>

Defendants have submitted twenty-nine documents purportedly relating to plaintiff's

fourth 440 motion to vacate his conviction ("Redweld E").[11] Defendants claim that the

government's response to plaintiff's 440 litigation and related FOIL proceedings is not at issue in

this litigation and that plaintiff has not established substantial need to access attorney work

product pertaining to them. Defendants assert attorney work product protection for all of the

documents in Redweld E, "attorney work product-opinion" for twenty-one of the documents, and

deliberative process privilege for three documents.

        a.     Documents E-1

Defendants have provided duplicate copies of Document E-1, a letter sent from plaintiff's

counsel, Myron Beldock, to ADA Mintz on February 7, 2002, which contain handwritten notes

of emphasis by ADA Mintz, purportedly conveying mental impressions and opinions regarding

plaintiff's FOIL request. Defendants claim that this document contains core attorney work

product and is protected by the attorney work product protection. The index states that plaintiff's

counsel can access the underlying document without ADA Mintz's notes, as he is the author of

the letter.

Based on a review of this document, it does not appear that plaintiff has a substantial

need for Document E-1. The document contains only limited handwritten notes, comprised of

underlines and circles, and the underlying document is already accessible by plaintiff's counsel.

Accordingly, defendants are not required to produce Document E-1 at this time.

        b.     Documents E-2, E-4 and E-16 through E-19

Documents E-2, E-4, E-16, E-17, E-18, and E-19 are copies of United States caselaw,

---

[11]Thirteen of the documents in Redwell E are dated from February 7, 2002 until January 23, 2008. Dates for the rest of the documents in Redwell E are either unknown or estimated.

some of which contain handwritten attorney notes by the ADA. Document E-4 is in the form of an email. Defendants claim attorney work product protection for these documents and that Documents E-4 and E-16 contain core attorney work product. The index indicates that the underlying cases are publically available.

Based on a review of these documents, they do not appear to contain information that is relevant to plaintiff's case. Accordingly, defendants are not required to produce Documents E-2, E-4, E-16, E-17, E-18, and E-19.

        c.     <u>Documents E-3 and E-5</u>

Document E-3 is an unsent draft of a letter from ADA Mintz to Judge Pesce, purportedly conveying ADA Mintz's opinions regarding relevant caselaw in connection with plaintiff's fourth 440 motion. According to defendants, the final version of this letter was copied to plaintiff's counsel on July 23, 2004 and provides a less intrusive means of accessing the information contained therein.

Document E-5 consists of a business card and two pages of handwritten attorney notes, believed to be written by ADA Mintz, purportedly conveying mental impression and opinions related to her conversations with Detective Bruce Mitchell of the 67th Precinct about plaintiff's fourth 440 motion. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection.

Based on a review of these documents, they do not appear to contain information that is crucial to plaintiff's case. Accordingly, defendants are not required to produce Documents E-3 and E-5 at this time.

d.    Documents E-6 through E-8

Documents E-6 through E-8 consist of handwritten attorney notes, believed to be written by ADA Mintz. According to defendants, Document E-6 contains logistical information relating to plaintiff's fourth 440 motion; Document E-7 conveys the attorney's opinions and mental impressions about the April 7, 2005 through May 16, 2005 hearings; and Document E-8 conveys mental impressions and opinions about testimony given during the May 16, 2005 hearing. Defendants claim attorney work product protection for these documents and that Documents E-7 and E-8 contain core attorney work product. Defendants further claim that any factual information contained in the notes in Documents E-7 and E-8 is available less intrusively in the transcripts of the hearings.

Documents E-6 and E-8 do not appear to contain information that is relevant to plaintiff's claims. Accordingly, defendants are not required to produce documents E-6 and E-8. However, based on a review of document E-7, the Court finds that plaintiff has shown substantial need for this document and an inability to obtain its substantial equivalent without undue hardship. Accordingly, defendants are Ordered to produce E-7.

e.    Documents E-9, E-11, E-12, and E-29

Defendants have provided three drafts of Document E-9, one copy of Document E-11, three drafts of Document E-12, and one copy of Document E-29. These documents are memoranda, internal to the District Attorney's Office, sent by ADA Mintz to ADAs Anne Swern (E-9 and E-11) and Ken Taub (E-12), or to Lance Ogiste (E-29), counsel to the KCDA. According to defendants, the memoranda convey ADA Mintz's mental impressions and opinions regarding plaintiff's case. Defendants claim that these documents contain core attorney work

35

product and are protected by the attorney work product protection. Defendants further assert that all except Document E-29 are protected by the deliberative process privilege.

Based on a review of these documents, Documents E-9, E-11, E-12, and E-29 do appear to be core work product and do not appear to contain information that is not otherwise accessible to plaintiff. Accordingly, defendants are not required to produce these documents at this time.

      f.    Documents E-10, E-13, and E-14

Document E-10 consists of a fax from Paul Goncharoff, who appears to have been a forensic biologist, and the handwritten notes of ADA Mintz, purportedly conveying mental impressions and opinions regarding DNA analysis in relation to plaintiff's fourth 440 motion.

Document E-13 consists of handwritten attorney notes, believed to be written by ADA Mintz, purportedly conveying mental impressions and opinions regarding Greene v. Walker, in which the Second Circuit Court of Appeals affirmed the denial of plaintiff's petition for a writ of habeas corpus. Defendants claim that Documents E-10 and E-13 contain core attorney work product and are protected by the attorney work product protection and that the government's response to plaintiff's denial of habeas corpus is not at issue in this litigation.

Document E-14 consists of typed notes, internal to the District Attorney's Office, which also contain the handwritten notes of ADA Mintz. Defendants contend that this document conveys attorney work product regarding proceedings in 2003 and that this document is protected by the attorney work product protection.

Based on a review of these documents, they do not appear to contain information that is relevant to plaintiff's instant case. Accordingly, defendants are not required to produce Documents E-10, E-13, and E-14.

g.    Document E-15

Document E-15 is a note, internal to the District Attorney's Office, purportedly conveying attorney opinion and mental impressions on the status of plaintiff's case and discussing whether a reply brief should be filed by the People. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. Further, the index indicates that, to the extend Document E-15 discusses arguments raised in defendants' brief and the People's brief, any information therein could be obtained less intrusively by reference to those briefs.

Based on a review of this document, plaintiff has not shown a substantial need for the information contained in this document or an inability to obtain the substantial equivalent elsewhere without undue hardship. Accordingly, defendants are not required to produce Document E-15 at this time.

h.    Documents E-20 through E-22

Documents E-20 through E-22 consist of attorney notes, believed to be written by ADA Mintz, purportedly conveying mental impressions and opinions about descriptions given by witnesses in relation to plaintiff's fourth 440 motion. The witnesses discussed in these documents include Rodolfo Brown and Ruperto Lindsay (E-20); Fred Thomas,[12] Abdul

---

[12]Plaintiff contends that, on June 15, 1983, Fred Thomas gave descriptions of three men he witnessed running from the subway station in which John Choi was murdered at the approximate time of the incident. (Compl. ¶¶ 119-123).

Rahman,[13] Eric Head,[14] Reynold Guerrier,[15] James Robinson,[16] Lavaughn Ryan,[17] and Mark Best (E-21); and Abdul Rahman, Eric Head, Reynold Guerrier, James Robinson, and Mark Best (E-22). Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection. The index indicates that plaintiff can obtain any factual information in Document E-20 from Ruperto Lindsay's December 21, 2010 deposition.

Based on a review of these documents, the Court finds that Documents E-20 through E-22 primarily contain litigation strategy and lack information that is relevant to plaintiff's instant case. Accordingly, defendants are not required to produce these documents.

---

[13]Plaintiff claims that Abdul Rahman was a vendor standing on the subway station platform at the Nostrand and Church Avenue subway station, and that Mr. Rahman witnessed John Choi's murder. (Compl. ¶¶ 60-63).

[14]On June 14, 1983, Eric Head was allegedly interviewed by detectives Norrito and Tumbarello, and he reported seeing three men leave the subway station where Choi was murdered. According to plaintiff, Head was shown photographs and identified these men as Joseph Ross, Ronald Blanding, and Lenny Best, the older brother of Mark Best. (Compl. ¶¶ 147-154). Plaintiff also claims that the official DD5 report about information taken by the police from Eric Head falsely stated that the third person Head identified was Eric Tidwell rather than Lenny Best. (Compl. ¶ 164).

[15]According to the Complaint, Reynold Guerrier is "a cab driver, who described three men, seen by other witnesses running from the subway station, who entered his taxicab several blocks away from the scene of the crime." (Compl. ¶ 109).

[16]Plaintiff asserts that James Robinson is a "neighborhood witness," who was interviewed on June 14, 1983 at the 67th Precinct. According to plaintiff, Robinson told the police that, on the date of Choi's murder, he chased a man who was running on Nostrand Avenue and saw him enter a taxicab in which two other men were already sitting. Robinson described the man he chased as, inter alia, a black male approximately six feet in height. (Compl. ¶¶ 111-115).

[17]The Complaint alleges that Lavaughn Ryan was also interviewed at the 67th Precinct on the date of Choi's murder and that Ryan told officers he has seen three men running on Church Avenue at the approximate time of the incident. (Compl. ¶¶ 116-118).

i.    Documents E-23 through E-27

Documents E-23 and E-24 consist of handwritten attorney notes referencing the latent prints and serology report in plaintiff's case, and a list of tasks relating to plaintiff's fourth 440 motion, respectively. Defendants claim that these documents are protected by the attorney work product protection.

Document E-25 is a transcript of an interview conducted with Abdul Rahman by Myron Beldock on August 13, 2004 in relation to plaintiff's fourth 440 motion, which contains handwritten notes by ADA Mintz, purportedly conveying opinions and mental impressions about plaintiff's case. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection, and the index indicates that plaintiff can independently access the underlying transcript without ADA Mintz's notes, as plaintiff's counsel conducted and transcribed the interview.

Document E-26 is a letter dated January 3, 2007 from Myron Beldock to James Pelzer, clerk of the New York Supreme Court, bringing the court's attention to caselaw relevant to the People's appeal of Judge Pesce's decision to vacate plaintiff's conviction. According to the defendants, this version of the letter contains handwritten attorney notes conveying mental impressions and opinions about the caselaw and its relevance to plaintiff's case. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection, and the index indicates that plaintiff can access the underlying letter without the handwritten notes, as he is the author of the letter.

Document E-27 is a handwritten note, internal to the District Attorney's Office, from ADA Sutley to ADA Mintz, purportedly conveying opinions and mental impressions regarding

caselaw relevant to the People's appeal of Judge Pesce's decision to vacate plaintiff's conviction. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Based on a review of these documents, they appear to be core work product and do not appear to contain information for which plaintiff has shown a substantial need. Accordingly, defendants are not required to produce Document E-23, E-24, E-25, E-26 and E-27.

      j.    Document E-28

Document E-28 consists of handwritten attorney notes, believed to be written by ADA Mintz during the pendency of plaintiff's fourth 440 motion, purportedly conveying opinions and mental impressions about the processing of the knife used in John Choi's murder. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Plaintiff has shown a substantial need for Document E-28 and an inability to obtain the substantial equivalent without undue hardship. Accordingly, defendants are Ordered to produce Document E-28 to plaintiff.

      6.    Undated Documents

Finally, defendants have submitted eleven undated documents for which defendants could not ascertain the related proceedings ("Redweld F"), although, in some instances, defendants have provided rough estimates of a document's date. Defendants assert attorney work product protection for all of the documents in Redweld F and "attorney work product-opinion" for six of the documents.

a.    Document F-1, F-10, and F-11

Document F-1 consists of handwritten attorney notes, purportedly conveying opinions and mental impressions relating to key events in plaintiff's case. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection.

Documents F-10 and F-11 consist of ADA Lewis' handwritten notes, regarding discussion with the NYPD Legal Bureau about locating documents in connection with one of plaintiff's 440 motions. Defendants claim that these documents are protected by the attorney work product protection.

The handwritten notes in Documents F-1, F-10, and F-11 are largely illegible and appear to be irrelevant to plaintiff's case. The Court finds that these Documents need not be produced.

b.    Documents F-2 through F-5

Documents F-2 through F-5 are copies of United States caselaw, containing handwritten attorney notes or analysis. Defendants claim that these documents are protected by the attorney work product protection and that Documents F-4 and F-5 contain core attorney work product. According to the defendants' index, the underlying cases are all publically accessible documents.

Based on a review of these documents, they do not appear to contain information that is relevant to plaintiff's case or not otherwise accessible without undue hardship. Accordingly, defendants are not required to produce Documents F-2, F-3, F-4, and F-5.

c.    Document F-6

Document F-6 is a handwritten log, internal to the District Attorney's Office, listing information about filings made in plaintiff's case. Defendants claim that this document is

41

protected by the attorney work product protection.

Plaintiff has not shown a substantial need for the information contained in this document, and Document F-6 need not be disclosed at this time.

        d.     Documents F-7 through F-9

Documents F-7 and F-8 consist of handwritten attorney notes, believed to be written by ADA Plaszner, purportedly conveying opinions and mental impressions relating to Jae Hark Kim's testimony and the questioning of Detective Norrito, respectively. Defendants claim that these documents contain core attorney work product and are protected by the attorney work product protection.

Document F-9 consists of handwritten attorney notes, believed to be written by ADA Mintz, purportedly conveying opinions and mental impressions about the hearing testimony of Detectives Norrito and Tumbarello, and Larry Williams. Defendants claim that this document contains core attorney work product and is protected by the attorney work product protection. The index indicates that plaintiff can obtain factual information contained in this document from the transcript of the December 14, 1984 Wade/Dunaway hearing.

While Document F-7 does not contain information for which plaintiff has shown a substantial need or an inability to obtain elsewhere without undue hardship, Documents F-8 and F-9 do appear to contain information relevant to plaintiff's claims. Accordingly, defendants are Ordered to produce Documents F-8 and F-9, but need not produce Document F-7 at this time.

B.     Grand Jury Minutes

In his June 17, 2011 motion, plaintiff sought production of certain materials related to the grand jury's deliberations in the underlying criminal prosecution, particularly the testimony of

Mark Best. (Mot. at 36). In response, defendants contended that Federal Rule of Criminal Procedure 6(e)(2) and New York Criminal Procedure Law § 190.25 prohibit disclosure of matters before the grand jury. (Opp. at 26). After hearing both parties on the issue, the Court found that plaintiff had made the requisite showing of particularized need in order to justify disclosure of the requested information and that the significant passage of time - more than twenty-five years - had diminished the need to protect the secrecy of the grand jury proceeding. (Ord. at 16). However, "out of deference to the state law concerns regarding the general privacy of grand jury proceedings" (Ord. at 17), the Court directed defendants to produce the minutes for in camera review before determining whether to Order defendants to disclose them to plaintiff. (Id.)

On October 17, 2011, pursuant to the Court's Order, the Kings County District Attorney sent the Court minutes containing the grand jury testimony of Detective Michael Norrito and the entering of three documents into evidence.[18] Defendants claim that, with the exception of Jae Hark Kim's testimony, which is already in plaintiff's possession, the minutes provided to the Court constitute the entirety of testimony and evidentiary matters before the grand jury.

Although the Court is inclined to agree with plaintiff that disclosure of any testimony by Mark Best would be proper, such testimony has not been provided. Obviously, the most important implication of the absence of any minutes is that Mark Best did not testify before the grand jury. By plaintiff's own admission, the minutes that have been provided, which consist solely of the testimony of Detective Norrito, have already been produced in the underlying

---

[18]The three documents are the Certificate of Death, Police Identification of Body and Personal Identification of Body of Mr. Choi, the victim in the underlying criminal case.

criminal case. (Mot. at 36). Thus, the Court declines to Order production of the grand jury minutes, which have been previously provided.[19]

C.     Criminal History Records

Plaintiff's motion sought production of the criminal records of thirteen persons listed on defendants' confidentiality log. (Mot. at 38). Defendants claimed, in response, that a confidentiality agreement between the New York State Division of Criminal Justice Services (DCJS) and the Kings County District Attorney's Office prohibits "dissemination of criminal history records. . .[unless] specifically authorized by law." (Vogel Declaration in Support of Defendants' Response to Plaintiff's Motion to Compel, filed on July 6, 2011, Ex. 27 at 2-3). The

---

[19]There is an additional reason for the Court to decline to provide the minutes of Detective Norrito's grand jury testimony. The Supreme Court recently held that "a witness in a grand jury proceeding is entitled to the same absolute immunity from suit under [Section] 1983 as a witness who testifies at trial." Rehberg v. Paulk, – U.S. –, 132 S. Ct. 1497, 1498 (2012) (dismissing Section 1983 claims against a district attorney, prosecutor, and investigator alleging that they had fabricated evidence in their grand jury testimony against a criminal defendant). Further, the Court in Rehberg v. Paulk held that the immunity of grand jury witnesses "may not be circumvented. . .by using evidence of the witness' testimony to support any other [Section] 1983 claim concerning the initiation or maintenance of a prosecution." – U.S. –, 132 S. Ct. at 1506. Therefore, it appears that the Supreme Court's holding in Rehberg v. Paulk would bar disclosure of Detective Norrito's grand jury testimony even if it had not already been produced to plaintiff.

However, because Mark Best is not a defendant in this case, disclosure of his grand jury testimony, had it been provided, may have been proper despite Rehberg v. Paulk. The question of whether the Supreme Court's reference to "'any other [Section] 1983 claim' refers to *any claim at all* - or. . .to *any claim against the witness who testified*" was addressed recently by the Federal District Court for the Southern District of New York in Frederick v. New York City, No. 11 CV 469, 2012 WL 4947806, at *3 (S.D.N.Y. Oct. 11, 2012) (emphasis in the original). The Court in Frederick v. New York City held that Rehberg v. Paulk "does not create a categorical bar to the use of grand jury testimony as evidence against defendants in malicious prosecution suits brought pursuant to [Section] 1983. Rather, where [Rehberg v. Paulk] bans 'using evidence of the witness' testimony to support any other [Section] 1983 claim concerning the initiation or maintenance of a prosecution,' that decision prohibits only the use of a witness's own grand jury testimony against that witness if he or she subsequently becomes a [Section] 1983 defendant." 2012 WL 4947806, at *4.

44

Court found that plaintiff had demonstrated a need for the criminal history records and that "the unique circumstances of this case persuade the Court to conclude that state privileges may need to give way to federal concerns present here." (Ord. at 18). Accordingly, the Court Ordered plaintiff to prepare and submit to the Court a subpoena to be so-ordered directing DCJS to produce the relevant criminal history records for in camera review. (Id.)

On October 25, 2011, the Court received the criminal history records requested by plaintiff for in camera review.[20] Although no criminal records were found for Queenie Jones or Sergio Azona, the Court finds that the remaining criminal history records "reasonably could lead to other matter that could bear on any issue that is or may be in the case," Crosby v. City of New York, 269 F.R.D. at 282, and Orders defendants to produce the records to plaintiff. However, in the interest of privacy, the Court finds that redactions of certain identifying information would be appropriate.

Accordingly, defendants are Ordered to produce the requested criminal history records, excluding Queenie Jones and Sergio Azona, with the following redactions: social-security numbers should include only the last four digits, and dates of birth should include only the year of the individual's birth.

---

[20]It appears that the subpoena received by the DCJS included a request for the records of Barbara Nicholas, Cy Greene's sister-in-law. Plaintiff did not request Ms. Nicholas' records in his motion, and the DCJS was unable to identify any record on file for Ms. Nicholas.

<u>CONCLUSION</u>

Having reviewed the documents produced for in camera review, the Court Orders as follows:

1.      From Redwell A, defendants are Ordered to produce Documents A-2, A-4, A-6, A-9, A-11, A-15, A-16, A-17, A-18, A-19, A-20, A-21, A-22, A-25, A-28, A-29, A-30, A-31 (with redactions), page KCDA-PRL 0000328 of A-32, pages KCDA-PRL 0000333 and 0000336 of A-33, A-34, A-35, A-38, A-39, A-42, A-44, and A-46, and to provide additional information about Document A-12 as directed.

2.      From Redwell B, defendants are Ordered to produce Document B-3.

3.      From Redwell C, defendants are Ordered to produce Documents C-1 and C-3.

4.      From Redwell D, defendants are Ordered to produce Documents D-1 and D-4.

5.      From Redwell E, defendants are Ordered to produce Documents E-7 and E-28.

6.      From Redwell F, defendants are Ordered to produce Documents F-8 and F-9.

7.      Defendants must produce the criminal history records for Larry Williams, Abdul Rahman, Henry King, Mark Best, Eric Head, Kevin Davis, Ruperto Lindsay, Delano Brown, Leonard Best, Joseph Ross, and Patrick Palmer. Social-security numbers should be redacted to include only the last four digits, and dates of birth should be redacted to include only the year of the individual's birth.

**SO ORDERED.**
Dated: Brooklyn, New York
      November 27, 2012

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York